# 19-2460
## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DESHEILA C. HOWLETT

Plaintiffs-Appellees,

vs.

CITY OF WARREN, LT. LAWRENCE GARNER,
SHAWN JOHNSON and ANWAR KHAN

Defendants-Appellants

**On Appeal from the United States District Court
For the Eastern District of Michigan
Southern Division**

**DEFENDANTS-APPELLANTS' RESPONSE TO THE SHOW CAUSE
ORDER**

**CUMMINGS, MCCLOREY, DAVIS & ACHO
RONALD ACHO (P23913)
JAMES ACHO (P62175)
STANLEY I. OKOLI (P73722)
Attorneys for Defendants-Appellants**
17436 College Parkway
Livonia, Michigan 48152
734-261-2400

## SUMMARY OF FACTS

On March 25, 2021 this Court ordered that the Defendants show cause why they should not be sanctioned for prosecuting a frivolous appeal under Rule 38. Several events transpired earlier during the pendency of the appeal that are relevant to the order. On January 17, 2020, the Plaintiff filed a motion to dismiss the appeal, contending that this Court lacked jurisdiction to consider the appeal. The Defendants responded, and laid out the reasons why they believed that the appeal should be considered on its merits, to wit: 1) That the issue of qualified immunity is of significance in this case, and was adequately raised and briefed in the lower court; 2) That the central facts were undisputed, and; 3) That no prejudice would accrue to the Plaintiff should the appeal proceed and; 4) That extensive briefing and an oral hearing was appropriate in this case. *See generally*, **R.E. 18**, Appellant's Response to the Appellee's Motion to Dismiss Appeal, pp. 1-9, filed 1/24/20. Among the issues to be tackled was whether the issue of qualified immunity was adequately raised in the trial court. *Id*.

On August 20, 2020 this Court issued an order referring the case to a merits panel. Its ruling appeared to agree with the Defendants' assessment of the viability of the appeal, finding that:

> *Because the factual-legal issue governing jurisdiction is a close call, permitting the merits panel to consider the issue after completion of briefing is the most prudent course of action. The merits panel is also better situated to consider Howlett's claim that defendants forfeited the*

*defense of qualified immunity by failing to argue this issue in their motion for reconsideration.* Cf *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 833 (6th Cir. 1999). **R.E. 20-2**, Order Referring Appeal to the Merits Panel, p. 3, filed 8/20/2020 (emphasis added).

In its brief on appeal, the Defendants argued among other things that Defendants Khan, Johnson, and Garner did not violate the Plaintiff's constitutional rights. The Defendants equally argued that Defendants Khan and Garner were entitled to qualified immunity.

## LAW AND ARGUMENT

### A. The Appeal is not Frivolous and was not Taken in Bad Faith

This Court held that "Defendants' failure to address the jurisdictional issues with their appeal flagrantly disregarded our prior order, which warned that a defendant may not pursue an interlocutory appeal of a denial of qualified immunity that turns on a genuine issue of material fact." **R.E. 39-2**, Order on Appeal, p. 3, filed 3/25/2021. But the order referring the appeal to a merits panel did not have the appearance of a warning, but rather seemed a benign conclusion by this Court that a briefing and hearing on the issues would justifiable under the circumstances. The order referenced relevant case law about issues suitable for an appeal, but it appeared to conclude that a further consideration was needed, and in no away appeared to be an admonishment of the Defendants to constrain their appeal. If the order had stated that the Defendants were to tailor their arguments, they would have assiduously complied. But the order appeared to imply that the Defendants were justified in

continuing with the appeal, or at the very least that there was a meritorious question as to whether the appeal should continue.

This Court held that *McDonald v. Flake*, 814 F.3d 804 (6th Cir. 2016) is indistinguishable from this case. But *McDonald*, *supra* is different from the instant case in a variety of significant ways, beginning with the content of the appellate briefs submitted by the parties. The Defendants' brief on appeal in this case addressed a medley of issues appropriate for appeal, including arguments that they did not violate the Plaintiff's constitutional rights, and the issue of qualified immunity. As held by this Court in *McDonald*, *supra*:

> *In his brief on appeal, Officer Flake barely even feigns an attempt at accepting the plaintiffs' version of the facts (but for one) and instead propounds his own version of the facts and the inferences that he would draw from them.* For example, the district court cited McDonald's assertion that he smelled alcohol on Officer Flake's breath, and drew an inference that Flake's consumption of alcohol prior to the confrontation might have affected the reasonableness of his actions towards the plaintiffs. On appeal, Flake does not accept either McDonald's evidence or the district court's inference, arguing instead:
>
> *Officer Flake does dispute that he was personally drinking alcohol, and he submits that the record in this case supports his position on the issue and not that of Plaintiffs*. Every officer, even those that admitted to consuming alcohol themselves, testified that Officer Flake does not drink alcohol ever. Not a single person witnessed Officer Flake consume alcohol. The only evidence Plaintiffs offered was testimony from McDonald, who was admittedly intoxicated at the time, that he smelled alcohol on Officer Flake's breath from five (5) feet away.
> This is exactly the type of factual dispute over which we have no interlocutory appellate jurisdiction. *And this is typical of both Flake's and the City's arguments in their briefs in this appeal*. *McDonald*, 814 F.3d at 813–14 (internal citations omitted).

Unlike the brief presented by the appellant in *McDonald*, here the Defendants argued repeatedly in their brief that even accepting the Plaintiff's version of events, and according all rational inferences to her, summary judgment would nevertheless have been appropriately granted in favor of the Defendants. For example:

As to Defendant Shawn Johnson, the Defendants argued thus:

Defendant Shawn Johnson is alleged to have "sniffed the Plaintiff's hair in a suggestive manner," suggested that the Plaintiff was his slave, suggested that the Plaintiff would be "made a slave" at the police precinct, compared the Plaintiff to the gorilla on the label of gorilla glue, and made disparaging comments about her accent and clothing. *Even if true, the conduct described above did not rise to the level of violating the Plaintiff's rights*. **R.E. 23**, The Defendants' Brief on Appeal, Page 44, filed 9/29/20 (internal citations omitted) (emphasis added).

As to Defendant Lawrence Garner, the Defendants argued thus:

*Even according deference to the Plaintiff as the nonmoving party, Defendant Garner did not violate her rights. By her own testimony, the Plaintiff was initially separated from Defendant Johnson after the investigation – not just in proximity but by unit – until she voluntarily accepted a promotion to Defendant Johnson's new unit*. The Plaintiff's acceptance of the new position guaranteed that she would once again interact with Johnson, as members of each unit shared work and information. Had WPD not offered the Plaintiff the position because she and Defendant Johnson would once again cross paths, the Plaintiff would conceivably claim discrimination just on that basis. **R.E. 23**, Page 45 (internal citations omitted) (emphasis added).

Hence, the Defendants here devoted several pages of their brief to the argument that even giving the Plaintiff's version of events superseding consideration, summary judgment remained appropriate for them, unlike the

defendant in *McDonald, supra*. The facts presented here are a far cry from the facts as existed in *McDonald*, where the defendant wholly refused to accept the Plaintiff's factual contentions, but rather attempted to rely on his differing account. Continuing – in highlighting the defendant's utter failure to accept the plaintiff's version of events in *McDonald* – this Court found that:

> *Officer Flake denies all of this and insists on his own, opposite version of events* (e.g., he did not make any racial slur; he did not drink any alcohol; he was wearing police uniform clothing; his badge was visible; he did immediately identify himself as a police officer; he did not assault anyone; McDonald was about to attack him without provocation before another officer initiated contact; and Flake was unaware that there was any alcohol present at the precinct or that other officers had been drinking). As the district court explained—clearly, thoroughly, and repeatedly—deciding between these two versions is a task for the jury, not for the district court on summary judgment or for this court on appeal. *McDonald*, 814 F.3d at 815 (emphasis added).

Here, the Defendants have done the exact opposite, and having made arguments that rely on the Plaintiff's version of events being adopted as presented in the lower court. In the *McDonald* case, it was held that where legal and factual challenges are intertwined, this Court separates the reviewable aspects of the appeals from the unreviewable portions, and that in doing so, deference would be accorded to the district court's factual assessments. *McDonald*, 814 F.3d at 813. This is precisely the scenario presented here, where the Defendants have presented arguments about why summary judgment was nevertheless appropriate even if the

Plaintiff's version of events were to be accepted at face value. In its order referring this appeal to the merits panel, this Court held that:

> *Whether an appeal presents a reviewable legal dispute, as opposed to a non-reviewable factual dispute, is not always readily apparent.* Which side of the fact-law line an individual case falls on may become clear only after the parties have fully briefed the case. *In all but the clearest circumstances, normally the safest course would be for the parties to address the jurisdictional issues along with the merits in their briefs and for this Court to postpone a final decision on jurisdiction until the case is argued*". **R.E. 39-2**, p. 2. (emphasis added) (internal citations omitted).

The ruling above appeared to agree that this case presented a close call, and that only upon the issues being briefed could the clarity be achieved. Having already briefed the issue of jurisdiction in response to the Plaintiff's motion to dismiss the Defendants believed they were acting in full compliance with this Court's order, and in no way construed it as a warning on any issue. An objective review of the language of the order does not so much find it to be admonitory as it does procedural. It would be unfair and an unexpected result to sanction the Defendants, who merely thought upon carefully reviewing the order referring this case to a merits panel that this Court had accepted that this was precisely the type of case that merited consideration on the merits. The order further held that:

> Although briefing has been held in abeyance pending the disposition of the instant motion, the parties' filings below establish that defendants dispute Howlett's version of the facts. *Such factual disputes alone, however, may not divest us of jurisdiction if defendants also argue that a constitutional violation did not occur or that, if a violation did occur, their actions did not infringe upon a clearly established right*. The latter

issues are legal ones over which we have jurisdiction. **R.E. 20-2**, Order Referring Appeal to the Merits Panel, p. 3, filed 8/20/2020 (emphasis added).

Notably, the Defendants acted exactly as envisioned by the ruling above by: 1) Arguing that a constitutional violation did not occur; and 2) That their actions did not infringe upon a clearly established right. No less than 4 pages were devoted to the qualified immunity issue in the Defendants' principal brief on appeal. **R.E. 23**, p. 48-52. Argument No. 9 asserted that "[t]he individual defendants are entitled to qualified immunity." **R.E. 23**, p. 48. Among the various arguments presented in support of qualified immunity was the argument that Defendant Kahn did not violate any clearly established law. Hence, the argument was made that:

> *Defendant-Appellee Kahn's conduct did not violate any clearly established law and were objectively reasonably*. There was no clearly established right to be free of detention when speeding in a nondescript vehicle which gave no indication that it was being used for law enforcement purposes. There was reasonable suspicion and probable cause to stop a plain, unofficial-looking vehicle that was moving at top speed in defiance of the pertinent speed limit.

Notably, the argument made above was in conformity with the Plaintiff's testimony, where she admitted that she was not driving her official police vehicle, and that she was speeding at the pertinent time when she was detained by Defendant Khan as partially formed the basis for her cause of action him. Hence, the Defendants' brief on appeal did present the argument that the individual defendants did not violate the Plaintiff's clearly established rights, as contemplated by the order

referring the appeal to the merits panel. Similarly, as it relates to Defendant Johnson, the argument was made that:

> Even focusing on the Plaintiff's version of events, Defendant Garner is nevertheless entitled to qualified immunity. WPD was under no obligation to separate the Plaintiff from Defendant Johnson in the first instance, particularly because the Plaintiff told the police officers investigating the incident that she did not want him disciplined. Separating Defendant Johnson was one in a medley of disciplinary actions that were instituted against him. He had apologized, had been written up and had been transferred to another unit. There was every reason to believe that he was chastened and had learned his lesson, particularly 19 months after the fact. The Plaintiff had no clearly established right not to be in the same vicinity as a fellow police officer in the same unit, when she accepted a promotion that facilitated her reunion with Johnson. Moreover – as previously established – Johnson and the Plaintiff were not sitting right next to each other. The logistics of running a functioning workplace effectively played a role in the scheme of things, and the Plaintiff had no constitutional right to interfere with the smooth and efficient running of operations at the police precinct. **R.E. 23**, p. 52.

Notably, the issues presented in the excerpt above are legal ones as opposed to factual ones, the Defendant having accepted the Plaintiff's account of events for the purposes of the appeal. One of the legal issues presented in the excerpt above, for example, was whether it was violation of the Plaintiff's clearly established rights not to separate the Plaintiff from Defendant Johnson at their workplace. In addition to the merits of the qualified immunity argument presented by the Defendants, the procedural issue of whether the argument was adequately raised in the lower court was also an issue to be considered by this Court on appeal. *See* **R.E. 23**, pp. 50-51; *See also*, **R.E. 25**, pp. 12-15. The Defendants' overarching theme throughout their

brief on appeal, and their reply to the Plaintiff's brief on appeal was that even according the Plaintiff's account of events deference, that summary judgment was warranted.

As expressly permitted by precedent, wherever the record blatantly contradicted the Plaintiff's position, the Defendants did emphasize that fact, and were not required to accept it at such value. As held by this Court in *McDonald*, *supra*, "we may decide, as a legal question, an appeal challenging the district court's factual determination insofar as the challenge contests that determination as 'blatantly contradicted by the record, so that no reasonable jury could believe it.' *McDonald*, 814 F.3d at 812 citing *Scott v. Harris*, 550 U.S. 372, 380 (2007). Hence where the Plaintiff adopted the position in her brief, for example, that Defendant Johnson was not punished for his actions despite her deposition testimony to the contrary, the Defendants were entitled to disregard it and did reference that fact in their brief. *See* **R.E. 25**, p. 15. The Defendants' appeal was in no way reliant upon the sufficiency of the evidence of the Plaintiff's claims.

### B. Sanctions are not Warranted

As previously posited, the Defendants did not understand themselves to be violating any previous order of this court, and believe that they have a cognizable appeal based at least on the issue of the qualified immunity. While it is true that other arguments were advanced in their brief, the Defendants did so in order that the issues

not be considered abandoned, anticipating that this Court – as its order referring the appeal to a merits panel seemed to indicate – would entertain the viable portions of the appeal on its merits and discard any that it deemed procedurally inappropriate. But the central issue is that the Defendants believe that they have a cognizable appeal, where they argued that no clearly established rights of the Plaintiff was violated, and that qualified immunity was appropriate for the individual Defendants. This is not an instance where there was no justification at all for an appeal.

This case is substantially and substantively different from *McDonald, supra*, where sanctions were awarded against the defendant. In *McDonald*, *supra* after the plaintiff filed a motion in the district court, declaring the appeal to be frivolous, the trial court agreed that one of the defendant's arguments was viable, "so long as defendant accepts as true for the purposes of the motion Plaintiff's version of the facts." *McDonald*, 814 F.3d at 811. Hence, the appeal was expressly conditioned by the trial court upon the defendant accepting the plaintiff's version of events. As previously established in this brief, the defendant in *McDonald* did the exact opposite, and contested the plaintiff's version of events and attempted to rely upon his own differing version of events. *Id*. at 815. The Defendants have not done so here, and repeatedly made the point that although they disagree with the Plaintiff's version of events, they do not rely on the disparity in the divergent accounts for purposes of the appeal. Hence, the Defendants posited that:

In their principal brief, the Defendants took great care to point out that while they disputed the Plaintiff's recounting of the facts, their arguments were made in deference to the nonmoving party's version of events as required by Rule 56. Hence distilled to its essence, the Defendants' overarching argument is that even if all rational inferences are accorded to the Plaintiff, summary judgment for the Defendants is nevertheless warranted. **R.E. 25**, p. 19.

The Defendants' appeal was not obviously without merit, as was the case in *McDonald*. In that case this Court held that sanctions were especially warranted "given the plaintiffs' motion in the district court and the court's resulting order, which *expressly put the defendants on notice that they must accept the plaintiffs' version of the facts and argue only legal issues.*" *McDonald*, 814 F.3d at 817 citing *Bailey v. Columbus Bar Ass'n*, 25 Fed. Appx. 225, 229 (6th Cir.2001). There has been no explicit warning directed at the Defendants in this case by either the district court or this Court. The order referring the appeal to the merits panel did not contain any language that the Defendants construed as a warning not to continue with the appeal, rather the order indicated that there were close issues that were best examined by such a panel. Moreover, the appeal had already been filed, with only a briefing by the parties waiting in the wings.

There were also other factors that were pivotal in the *McDonald* decision that are not at issue here. The trial court in that case expressed some concern about the defendant's conduct beyond the appeal which indicated that the defendant was

attempting to hinder the trajectory of the case, which was echoed by this Court. As held by this Court:

> In suggesting that the true purpose was delay, the plaintiffs point out that Officer Flake engaged in over two years of discovery before filing his motion for qualified immunity and then filed the appeal only days before trial was scheduled to begin. The City filed its appeal after that and only after the district court had denied its motion to continue trial to a later date. The district court itself expressed that it was "disturbed" and "troubled" by this timing, suggesting that it suspected the defendants of improper gamesmanship. The defendants respond, correctly, that they filed their appeals within days of the district court's order denying their motions. *McDonald*, 814 F.3d at 817.

Here, the trial court has not expressed any concerns of gamesmanship, and there are none. The Defendants genuinely believed that they had a chance to prevail on their appeal, and if their belief has not been borne out, it was not based on bad faith or an ulterior motive.

### C. The Amounts Sought by the Plaintiff is Exorbitant

The Defendants are not clear on whether this Court expects them to address the affidavit submitted by the Plaintiff as featuring his expenses in connection with the appeal in this brief, or at all. In any case, it seems prudent and logical to include the Defendants' position here on the affidavit indicating the Plaintiff's costs as was filed by the Plaintiff on this Court's order. To the extent that this Court does not expect or desire any response to the submitted affidavit from the Defendants, they pray that this Court ignore and discard the contents of this portion of the brief.

The Plaintiff alleges that she expended the round sum of 150 hours in connection with the appeal, and multiplies that by $300 per hour to arrive at a total of $145,000 supposedly expended on the appeal. The amount claimed by the Plaintiff on its face is grossly exorbitant, and bears no relation to the number of hours that would be required to mount a defense of an appeal of this nature. The Plaintiff does not offer this Court an itemized list of activities that she is alleging she has undertaken in pursuit of defending against the appeal. Instead she groups the activities into: 1) "Post-Decision and Commencement of Appeal," for the periods December 20, 2019 to December 30, 2019, 22 hours expended; 2) "Appellate Phase," for the periods January 2, 2020 to January 31, 2020, 63 hours expended and; 3) "Appellate Briefing and Decision Phase," for the periods February 1, 2020 to April 7, 2021, 65 hours expended. **R.E. 40**, The Plaintiff's Affidavit, filed 4/07/21.

The excessive nature of the billing at issue here cannot be overstated. For example, the Plaintiff alleges that she expended 22 hours for *reviewing* the notice of appeal, the motion for summary judgment, the motion for reconsideration, the motion for a stay pending appeal, reply to the response to motion to stay proceedings pending, appeal, and research regarding jurisdiction. The claimed 22 hours is not remotely justifiable for merely reviewing documents the cited documents; it took the Defendant less than 5 hours to accomplish much the same tasks. Similarly, the Plaintiff claims that it expended 65 hours for *reviewing* the briefing schedule, the

order referring the case to the merits panel, "review of preparation of brief," *reviewing* the reply brief, *reviewing* the order issued by this Court, and for *preparing* of affidavit of costs and attorney's fees. The tasks described took the Defendants no more than 5 hours – to be generous – but took the Plaintiff an astronomical 65 hours to accomplish.

Nor is it clear that this Court intended to permit the Plaintiff to bill for time preparing the affidavit. This Court's order merely stated that "Plaintiff may file an affidavit setting forth her reasonable costs and attorney fees incurred by this appeal no later than fourteen days after entry of this order." **R.E. 39-2**, p. 5. The embellished nature of the hours presented in the affidavit is all the more pronounced, considering that the Plaintiff is the Appellee in this case, and hence necessarily took on less of the tasks relating to the appeal than did the Defendants. The Defendants filed 2 briefs on the merits; a brief on appeal, and then a reply to the Plaintiff's response as compared to the Plaintiff who only filed one brief. And yet despite undertaking more tasks than the Plaintiff, the Defendants expended only a fraction of the hours in connection to the appeal.

In the *McDonald* case, despite the flagrant nature of the Plaintiff's conduct in defying an explicit order by the trial court – as was not done in this case by the Defendants – this Court assessed a fee of $1,500 from each of the appellants. *McDonald*, 814 F.3d at 817. Here, the Defendants believe that they do have

appealable issues, and did not act in flagrant disregard of any order. The language of the order referring the appeal to a merits panel did not so much read as a warning to the Defendants than a presentation of the factors that would eventually be considered by a merits panel. Punishment is not warranted here because the Defendants did not act in bad faith, but in the event that this Court is nevertheless inclined to sanction the Defendants, they pray that this Court do so in an amount similar to that which was assessed in *McDonald*, and which in no way matches the astronomical figure contained in the Plaintiff's affidavit.

## CONCLUSION AND RELIEF REQUESTED

The Defendants pray that this Honorable Court refrain from sanctioning the Defendants because they did not act in bad faith and had no ulterior motive in filing the instant appeal. The Defendants believe that they have issues aptly considered on appeal, particularly on the issue of qualified immunity, and whether the Plaintiff's constitutional rights were violated.

Respectfully submitted,<br>
**s/Stanley I. Okoli**<br>
17436 College Parkway<br>
Livonia, MI 48152<br>
Phone: (734) 261-2400<br>
Email: sokoli@cmda-law.com<br>
P 73722

April 19, 2021

# CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2021, I electronically filed the foregoing papers with the Clerk of the Court using the U.S. Court of Appeals CM/ECF electronic document filing system which will send notification of such filing to the attorneys of record.

s/Stanley Okoli
sokoli@cmda-law.com